```
                 UNITED STATES DISTRICT COURT
                  MIDDLE DISTRICT OF FLORIDA
                     FORT MYERS DIVISION
```

LESAMUEL PALMER,

               Plaintiff,

vs.                                     Case No.   2:10-cv-163-FtM-36DNF

DR. HEMPHILL,

               Defendants.
_____/

## **OPINION AND ORDER**

### **I. Status**

This matter comes before the Court upon review of Defendant Hemphill's Motion for Summary Judgment (Doc. #21, Motion), filed on December 29, 2010.  Defendant attaches the following documents in support of his Motion: relevant excerpts from Plaintiff's medical file (Def. Exh. A); Declaration of Robert Hemphill (Def. Exh. B); and, Inmate Movement/Transfer History for Plaintiff (Def. Exh. C). Plaintiff filed a response in opposition to the Motion (Doc. #30, Response) on April 22, 2011.  In addition to the documents that were submitted by Defendant, Plaintiff also attaches the following documents in support of his response: Defendant Hemphill's Answers to Plaintiff's Interrogatories (Pl. Exh. 1); Declaration of Marquis Jenkins (Pl. Exh. 2); Declaration of Leon Burroughs (Pl. Exh. 3); Declaration of LeSamuel Palmer (Pl. Exh. 4); and a health article about Naproxen that was found on-line (Pl. Exh. 5).  This matter is ripe for review.

Plaintiff LeSamuel Palmer (Palmer), a Florida prisoner, initiated this action by filing a *pro se* Civil Rights Complaint Form (Doc. #1, Complaint) pursuant to 42 U.S.C. § 1983, alleging an Eighth Amendment violation against Defendants Doctor Hemphill (Hemphill) and jail's "Medical Clinic." Liberally construing the Complaint, Plaintiff attributes liability to Defendant Hemphill stemming from Defendant's alleged delay in providing Plaintiff with medical treatment, and his refusal to provide Plaintiff with any pain medication for Plaintiff's second injury to his shoulder on October 14, 2009.[1] *See generally* Complaint. On December 21, 2010, the Court dismissed the Medical Clinic as a party to the instant action. *See* Doc. #19. Thereafter, Defendant Hemphill filed the instant Rule 56 Motion seeking judgment as a matter of law.

---

[1] Plaintiff first injured his shoulder during an altercation with another inmate on October 12, 2009. Plaintiff filed a separate civil rights action relating to the October 12, 2009 incident, including, *inter alia*, a claim alleging an Eighth Amendment claim for deliberate indifference against Defendant Hemphill regarding Defendant Hemphill's initial treatment of Plaintiff's shoulder immediately after the October 12, 2009 altercation. *See* 2:10-cv-98-FtM-36SPC. The Court granted summary judgment in favor of Defendant Hemphill on Plaintiff's Eighth Amendment claim stemming from Defendant Hemphill's medical care of Plaintiff in connection with the injuries he sustained on October 12, 2009, including the first injury to Plaintiff's shoulder. *See* January 27, 2011 Order (Doc. #56). In its January 27, 2011 Order, the Court found that Defendant Hemphill diagnosed Plaintiff with a dislocated shoulder and sent him to an outside medical facility, Charlotte Regional Medical Center, where Plaintiff was placed under anesthesia and his shoulder was put back into place. *Id.*

### III. Applicable Law

**A. Summary Judgment Standard**

"Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Moton v. Cowart,* 631 F.3d 1337, 1341 (11th Cir. 2011)(internal quotations and citations omitted). *See also*, Fed. R. Civ. P. 56(c)(2). "The moving party may meet its burden to show that there are no genuine issues of material fact by demonstrating that there is a lack of evidence to support the essential elements that the non-moving party must prove at trial." *Moton*, 631 F.3d at 1341 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The standard for creating a genuine dispute of fact requires the court to "make all *reasonable* inferences in favor of the party opposing summary judgment," *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc) (emphasis added), not to make all *possible* inferences in the non-moving party's favor.

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, *i.e.*, affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." *Beard v. Banks*, 548 U.S. 521, 529 (2006)(citations omitted); *Celotex*, 477 U.S. at 322; *Hilburn v.*

*Murata Electronics North America, Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party. *Beard*, 548 U.S. at 529 (citations omitted); *Shotz v. City of Plantation, Fl.*, 344 F.3d 1161, 1164 (11th Cir. 2003). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Cuesta v. School Bd. of Miami-Dade County*, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). In the summary judgment context, however, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney. *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir. 2002).

**B. Eighth Amendment- Deliberate Indifference Standard**

In the prison context, "[t]he Eighth Amendment can give rise to claims challenging specific conditions of confinement, the excessive use of force, and the deliberate indifference to a

prisoner's serious medical needs." *Thomas v. Bryant*, 614 F.3d 1288, 1303 (11th Cir. 2010)(citations omitted). In order to state a claim for a violation under the Eighth Amendment, a plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). This showing requires a plaintiff to satisfy both an objective and a subjective inquiry. *Farrow v. West,* 320 F.3d 1235, 1243 (11th Cir. 2003) (citing *Taylor v. Adams*, 221 F.3d 1254, 1257 (11th Cir. 2000)).

A plaintiff must first show that he had an "objectively serious medical need." *Id.* A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (citations omitted). "The medical need must be one that, if left unattended, pos[es] a substantial risk of serious harm." *Id.* Second, a plaintiff must establish that a defendant acted with "deliberate indifference" by showing both a: (1) subjective knowledge of a risk of serious harm (i.e., both awareness of facts from which the inference could be drawn that a substantial risk of serious harm exists and the actual drawing of the inference); and (2) disregard of that risk; and (3) conduct that is more than gross negligence. *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2005). "Whether a particular defendant has subjective knowledge of the risk of serious harm is a question

of fact 'subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Goebert v. Lee County*, 510 F.3d 1312, 1327 (11th Cir. 2007)(quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). "A difference in medical opinion does not constitute deliberate indifference so long as the treatment is minimally adequate." *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010)(citing *Harris v. Thigpen*, 941 F.2d 1495, 1504-05 (11th Cir. 1991)). A doctor's decision about the type of medicine that should be prescribed is generally "a medical judgment" that is "an inappropriate basis for imposing liability under section 1983." *Adams v. Poag,* 61 F.3d 1537, 1547 (11th Cir. 1995); *see also Waldrop v. Evans,* 871 F.2d 1030, 1033 (11th Cir. 1989) (stating that "[m]ere medical malpractice, however, does not constitute deliberate indifference. Nor does a simple difference in medical opinion.").

When a prison official eventually provides medical care, the prison official's act of delaying the medical care for a serious medical need may constitute an act of deliberate indifference. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999); *Harris v. Coweta County*, 21 F.3d 388, 393-394 (11th Cir. 1994); *Brown v. Hughes*, 894 F.2d 1533, 1537-39 (11th Cir. 1990). In determining whether the length of the delay violates the constitution, relevant

factors for the Court to consider include the nature of the medical need and the reason for the delay. *McElligott*, 182 F.3d at 1255. The Court should consider whether the delay in providing treatment worsened the plaintiff's medical condition, and as such "[a]n inmate who complains that delay in medical treatment [rises] to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of the delay." *Hill v. Dekalb Regional Youth Detention Center,* 40 F.3d 1176, 1187 (11th Cir. 1994), *abrogated on other grounds Hope v. Pelzar*, 536 U.S. 730 (2002). "Self-serving statements by a plaintiff do not create a question of fact in the face of contradictory, contemporaneously created medical records." *Whitehead v. Burnside*, 403 F. App'x 401, 403 (11th Cir. 2010)(citations omitted).

### IV. Findings of Fact and Conclusions of Law

On October 14, 2009, at 5:45 p.m., Plaintiff was escorted from his cell to the medical clinic complaining of shoulder pain. Plaintiff explained that he was lying down playing chess and his "right shoulder came out again." Def. Exh. A at 2. Plaintiff described his pain level as "10." *Id*. at 45. Plaintiff was examined by a nurse in the medical department, his vitals were taken, and the medications that Plaintiff was currently taking were noted. *Id*. at 45. Due to Plaintiff's other preexisting conditions, Plaintiff was taking four medications, including 500 mg of naproxin. *Id*. at 51. The nurse observed that Plaintiff's

splint for his right shoulder was "in place." *Id*. at 45. The nurse advised Plaintiff "on pain control," "on keeping extremity (splint) elevated," and "to report any tingling, numbness, skin discoloration, coolness, or increase of severe pain immediately." *Id*. The nurse wanted to admit Plaintiff to the infirmary overnight so that Plaintiff could be monitored and his shoulder could be checked every four (4) hours, until Dr. Hemphill arrived the next morning. *Id*. at 44-45; Def. Exh. B at 55. Plaintiff refused to stay overnight in the infirmary. *Id.* Dr. Hemphill was notified that Plaintiff refused housing in the infirmary. Def. Exh. A at 44; Exh. B at 55. Defendant signed a "Refusal of Heath Care Services" acknowledging that he was refusing medial advice to be housed in the infirmary and monitored every four hours. Def. Exh. A at 49.

At 9:45 a.m. the next morning, Dr. Hemphill examined Plaintiff. Def. Exh. B at 55. Dr. Hemphill "noticed an anterior bulge in [Plaintiff's] right shoulder and confirmed that [Plaintiff] had again dislocated his shoulder." *Id*. Dr. Hemphill contacted an official to request permission to send Plaintiff to an orthopedic specialist. *Id*. Within a few hours, Plaintiff was transferred to the South Florida Reception Center. *Id*.; Def. Exh. C. Dr. Hemphill was not involved in Plaintiff's care after he left Charlotte Correctional. Def. Exh. B at 55. On October 21, 2009, Plaintiff underwent surgery for his dislocated shoulder. *Id.*

Based upon the record, the Court finds that Plaintiff has failed to sustain his burden of demonstrating that there is a dispute of a material fact as to whether Dr. Hemphill was deliberately indifferent to Plaintiff's re-dislocated shoulder. The records indicate that Dr. Hemphill was not at the prison when Plaintiff re-injured his shoulder. Plaintiff was promptly examined and treated in the medical department by a nurse, who advised Plaintiff to stay overnight in the infirmary so medical staff could monitor Plaintiff.  It is unclear whether Dr. Hemphill made the recommendation for Plaintiff to be housed in the infirmary or whether the nurse made the recommendation that Plaintiff be housed in the infirmary, but Plaintiff acknowledges that he refused to stay overnight in the infirmary.  Response at 3.

Plaintiff suggests that because Dr. Hemphill did not examine him until the next morning, some sixteen hours later, that Dr. Hemphill was deliberately indifferent to his medical condition, his re-dislocated shoulder.  First, it is clear that Plaintiff was provided with medical care for his re-injured shoulder immediately after re-injuring his shoulder by medical staff at the institution. Plaintiff refused the medical care offered by officials--to be held overnight in the infirmary.  Admittedly, Plaintiff has a right to refuse medical treatment that is offered.  However, Plaintiff cannot refuse medical treatment and then complain about the consequences that result from his refusal. *See Griscom v. Rohling*,

No. 10-3134-Sac, 2010 WL 3721777 (D. Kan. 2010)(opining that "[a] prison inmate may not refuse to comply wtih reasonable procedures and efforts to administer medical care, or refuse treatment by certain medical providers, and then validly contend that others have denied treatment to him.").

Plaintiff asserts that in addition to re-dislocating his shoulder, he also tore a ligament and "could not sleep that night due to all the pain the Plaintiff was in." Response at 7. Plaintiff attaches the declaration of inmate Burrogs who states that he told a correctional officer that Plaintiff was in pain at 1:36 a.m. Pl. Exh. at 3. The officer told Palmer and Burrogs that he called the medical department, but was told by the nurse that "there was nothing she could do for [Plaintiff] to wait on the doctor." *Id.* There is no evidence that Dr. Hemphill was aware or ever told that Plaintiff had a torn ligament on the evening of October 14, 2009. Although an unspecified nurse was advised that Plaintiff was experiencing pain during the evening, there is no evidence that Dr. Hemphill was advised that Plaintiff was unable to sleep due to his pain. Further, because Plaintiff refused to be housed in the medical department that night, his pain levels could not be monitored by the medical department.

Even assuming *arguendo* that a sixteen-hour delay in examining Plaintiff can be attributed to Defendant Hemphill, the Court finds that there is no verifiable evidence that this delay worsened

-10-

Plaintiff's medical condition. *Hill,* 40 F.3d at 1187; *McElligott,* 182 F.3d at 1255. Plaintiff does not claim, nor is there any verifiable evidence in the record to suggest that awaiting for an examination by Dr. Hemphill until the next morning caused any detrimental effect to Plaintiff's dislocated shoulder. Instead, the record shows that surgery was not performed on Plaintiff for another six days after he was transferred from Charlotte Correctional Institution. Defendant Hemphill had no involvement with Plaintiff's medical care after he left Charlotte Correctional on October 15, 2009.

Plaintiff complains that Dr. Hemphill "did not offer the Plaintiff no [sic] medication," but the record indicates that Plaintiff was already receiving 500 mg of Naproxen for pain at the time his shoulder was re-injured. Response at 3-4. Even the documentation attached by Plaintiff indicates that Naproxen is used to "reduce swelling and treat pain." Pl. Exh. 5. The question of whether Plaintiff required a different type of pain medication, or an increase in the amount of pain medication constitutes a difference of medical opinion and does not amount to a constitutional violation. Further, it would have been reasonable for Dr. Hemphill to infer that Plaintiff was not in a significant amount of pain when the nurse advised him that Plaintiff refused to be housed in the infirmary.

Based on the record and applicable law, the Court finds that Defendant Hemphill is entitled to the entry of summary judgment on Plaintiff's Eighth Amendment claim as a matter of law.

ACCORDINGLY, it is hereby

**ORDERED**:

1. Defendant Hemphill's Motion for Summary Judgment (Doc. #21) is **GRANTED**.

2. The Clerk of Court shall enter judgment accordingly, terminate any pending motions, and close this file.

**DONE AND ORDERED** at Fort Myers, Florida, on this 6th day of July, 2011.

Charlene Edwards Honeywell
United States District Judge

SA: hmk

Copies: All Parties of Record